JUDGE HOLWELL

11 CIV 0420

RECEIVED
JAN 20 2011
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GREATSHIP (INDIA) LIMITED,

                         Petitioner,

-v-


MARINE LOGISTICS SOLUTIONS
(MARSOL) LLC,

                         Respondent.
--------------------------------------------------------x

11 CIV

**VERIFIED PETITION TO
RECOGNIZE, CONFIRM,
AND ENFORCE FOREIGN
ARBITRAL AWARD**

        Petitioner, GREATSHIP (INDIA) LIMITED, (hereinafter "GREATSHIP") by and

through its undersigned attorneys, CHALOS & CO, P.C., as and for its Verified Petition to

Recognize, Confirm and Enforce a Foreign Arbitral Award rendered in favor of GREATSHIP

and against Respondent MARINE LOGISTICS SOLUTIONS (MARSOL) LLC (hereinafter

"MARSOL") alleges upon information and belief as follows:

<u>JURISDICTION</u>

        1.     Jurisdiction is conferred under this Court's Federal Question Jurisdiction

pursuant to 28 U.S.C. § 1331, as the action arises under the enacting legislation for the New

York Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(hereinafter "the New York Convention"), codified at 9 U.S.C.§ 201 *et seq*. and the Federal

Arbitration Act, codified at 9 U.S.C. § 1 *et seq*.

<u>THE PARTIES</u>

        2.     At all times material hereto, Petitioner GREATSHIP, was and still is a foreign

business entity, organized and existing pursuant to the laws of India, with a principal place of

business at # 101, Marathon Innova B2, Off Ganpatrao Kadam Marg, Lower Parel (W),

Mumbai, 400 013, India.

3.      At all times material hereto, Respondent MARSOL was and still is a foreign business entity with a principal place of business at P.O. Box 31966, Dubai, United Arab Emirates.

VENUE

4.      Venue is proper in this District pursuant to 9 U.S.C. § 204, in that, save for the arbitration agreement; an action or proceeding with respect to the controversy between the parties could have been brought in this District.

5.      Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(c) and (d).

FACTS AND CLAIM

6.      On or about October 19, 2009, Petitioner, GREATSHIP, and Respondent, MARSOL, entered into two (2) settlement agreements which agreed terms of settlement in relation to two (2) time charterparty agreements (each dated November 27, 2007) for the time chartering of GREATSHIP's vessels GREATSHIP AMRITA and GREATSHIP ANJALI to MARSOL, as charterer.  A certified copy of the Settlement Agreement concerning the GREATSHIP AMRITA charterparty (hereinafter "the Amrita Agreement") is attached hereto as Exhibit "1".  A certified copy of the Settlement Agreement concerning the GREATSHIP ANJALI charterparty (hereinafter "the Anjali Agreement") is attached hereto as Exhibit "2".

7.      The parties' arbitration agreements are contained in Clause 6.1 of the Amrita Agreement and Clause 7.1 of the Anjali Agreement.  These agreements, which are identical, state as follows:

> This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to

arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force.  On the receipt of one party of the nomination in writing of the other parties arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator.  If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

8.      Pursuant to the Anjali Agreement, MARSOL agreed to pay GREATSHIP the net sum of USD 557,596.71 in respect of outstanding time charter hire for the GREATSHIP ANJALI.

9.      Pursuant to the Amrita Agreement, MARSOL agreed to pay GREATSHIP the sum of USD 1,811,516.00 in respect of outstanding time charter hire and USD 450,000.00 in respect of compensation for the early redelivery of the GREATSHIP AMRITA.

10.     The Amrita Agreement contained two (2) annexures, *i.e.* – Annexure I (Oustanding Statement) and Annexure II (Schedule of Payments), both of which were agreed by both parties in Clause 2.3 of the Amrita Agreement to be "an integral part of this agreement."  *See* Exhibit "1" at Clause 2.3.  Annexure I set forth the total sums due by MARSOL to GREATSHIP under the two (2) agreements (*i.e.* – USD 2,818,700) and Annexure II contained the agreed schedule of payments for MARSOL's payment of the settlement amount to GREATSHIP.

11.     The Amrita Agreement further provided that if MARSOL were to default in payment of any two (2) consecutive installments, "the defaulting sums along with all other sums . . . shall become due and payable immediately and shall carry an interest in the measure of 10% (ten percent) annually till the date of realization . . ."  *See* Exhibit "1" at Clause 2.6.

12.     The Amrita Agreement further provided that if MARSOL were to default in payment of any installment, "the same shall carry an interest in the measure of 10% (ten

percent) annually from the date when the said installment was to have been paid till the date of realization/payment." *See* Exhibit "1" at Clause 2.7.

13.     MARSOL defaulted in paying the October and November 2009 installments due under the payment schedule contained in Annexure II of the Amrita Agreement.

14.     Accordingly, GREATSHIP commenced arbitration pursuant to the terms of the Settlement Agreements and appointed Stuart Fitzpatrick as its arbitrator.     Thereafter, MARSOL appointed David Martin-Clark as its arbitrator.

15.     Upon consideration of the parties' respective written claim, defense, reply and response submissions and supporting documents, the arbitrators issued their Final Arbitration Award on September 22, 2010 in favor of Petitioner GREATSHIP.  A certified copy of the Final Arbitration Award is attached hereto as Exhibit "3".

16.     The Award provides under its terms that Respondent MARSOL is ordered to pay damages and costs as follows:

(a)     principal damages in the amount of USD 2,168,700.00;

(b)     contractual interest (calculated at the rate of 10% per annum and pro rata) from the period from and including December 1, 2009 up to and including April 5, 2010 in the sum of USD 84,316.80;

(c)     contractual interest on the sum of USD 2,168,700.00 at the rate of 10% per annum and pro rata (*i.e.* – USD 594.16 per day) from April 5, 2010 until the date of payment;

(d)     GREATSHIP's costs and fees, together with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests, from the date of the Final Arbitration Award until the date of payment;[1]

(e)     the arbitrators' costs for the Award: £6,070.00 (USD 9,645.93[2]), and provided that if GREATSHIP had paid any part of the arbitrators' costs of the Final Arbitration Award, it is entitled to an immediate reimbursement from

---

[1] GREATSHIP's costs and fees, including the arbitrators' costs for the Award, in relation to the arbitration reference are estimated to be £23,000, or USD 36,549.64 as assessed at www.xe.com on January 20, 2011.
[2] £6,070.00 = USD 9,645.93 as assessed at www.xe.com on January 20, 2011.

> MARSOL of the sum paid along with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests, from the date of payment by GREATSHIP until the date of reimbursement by MARSOL.[3]

*See* Exhibit "3" at pp. 4-5 and 22.

17.     GREATSHIP has demanded from MARSOL that the Respondent promptly remit the amounts due under the Final Arbitration Award.   Respondent, in bad faith, has refused, neglected, and/or otherwise failed to make any payment against the award.

18.     The Award is final and enforceable.   Under English law, the time limit in which Respondent could have appealed the Award has now run.

19.     Both the United Kingdom and the United States are parties to the New York Convention, which states that a court sitting in any nation that is a party to the New York Convention must recognize and enforce a foreign arbitral award, where certified copies of both the agreement to arbitrate and the arbitral award are presented to the court, so long as the application for such is timely made and none of the delineated exceptions for non-recognition are present.

20.     This application to recognize and confirm the arbitral award is brought within three (3) years from the day the arbitrators issued same and, accordingly, the application for its confirmation is timely in accordance with 9 U.S.C. § 207.

23.     Respondent cannot in good faith raise any of the delineated reasons under the New York Convention, Article V, for non-recognition of the Award.

WHEREFORE, Petitioner GREATSHIP prays:

---

[3] Petitioner GREATSHIP paid the arbitrators' costs in full on September 30, 2010 and, accordingly, interest has continued to accrue from this date.

A.      That process in due form of law issue against the Respondent MARSOL, citing Respondent to appear and answer under oath all, and singular, the matters alleged in the Verified Petition;

B.      That its foregoing Petition to Recognize, Confirm and Enforce the Foreign Arbitration Award be granted and the Award be recognized, confirmed, and made into a Judgment of this Court, to be entered in favor of Petitioner GREATSHIP (INDIA) LIMITED, and against Respondent MARINE LOGISTICS SOLUTIONS (MARSOL) LLC in the amount of USD 2,168,700.00, plus interest and costs as specified in the Award;

C.      That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary for the purpose of enforcing the Judgment, and/or any further judgments which may be obtained;

D.      That this Court grant Petitioner its costs and expenses, including reasonable attorneys fees, in pursuing Judgment and Enforcement; and

E.      That Petitioner may have such other, further and different relief as may be just and proper.

Dated: Oyster Bay, New York
       January 20, 2011

                             CHALOS & CO, P.C.
                             Attorneys for Petitioner
                             GREATSHIP (INDIA) LIMITED


By:    *Kerri M. D'Ambrosio*
                   George M. Chalos (GC-8693)
                   Kerri M. D'Ambrosio (KD-0249)
                   123 South Street
                   Oyster Bay, New York 11771
                   Tel: (516) 714-4300
                   Fax: (516) 750-9051
                   E-mail:gmc@chaloslaw.com
                           kdambrosio@chaloslaw.com

# EXHIBIT 1

## SETTLEMENT AGREEMENT

Under

Charterparty dated 27th November 2007 – m/v "Greatship Amrita"

**THIS AGREEMENT,** made and entered into this 19th day of October 2009

By and between

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC (ETA MARSOL)**, a company incorporated under the laws of Dubai, having its office at P.O. Box 31966, Dubai, (U.A.E) (hereinafter referred to as "**MarSol**" or the "Charterers") which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the FIRST PARTY;

and

**GREATSHIP (INDIA) LIMITED**, a company incorporated under the laws of India, having its office at # 101, Marathon Innova B2, Off Ganpatrao Kadam Marg, Lower Parel (W), Mumbai 400 013, India (hereinafter referred to a "**GIL**" or the "Owners"), which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the SECOND PARTY.

The above parties shall be collectively referred to as the "**Parties**" and each individually as a "**Party**"

**WHEREAS**

**(A)** The Parties have entered into a charterparty dated 27th November 2007 (the "Charterparty") for the let and hire of the m/v "Greatship Amrita" (the "Vessel"), a 2008 built anchor handling tug supply vessel presently registered under the Indian flag.

**(B)** Under the Charterparty, hire is outstanding from the MarSol to the GIL and the Parties wish to amicably resolve the payment of the outstanding hire.

**(C)** Marsol wishes to re-deliver the Vessel earlier than as provided in the Charterparty and GIL agrees to accept early re-delivery of the Vessel.

TRUE COPY
ATTESTED BY ME

**N. J. D'MONTE**
ADVOCATE & NOTARY
51-A, Chapel Road,
Bandra, Mumbai-50.
Ph. 9820068642 / 26424884

CERTIFIED TRUE COPY

For GREATSHIP (INDIA) LIMITED

Amisha Ghia
Company Secretary



NOTARY
N. J. D'MONTE
GREATER BOMBAY
Regd. No. 359
GOVT. OF MAHARASHTRA

1 9 NOV 2010

(D) The Parties have entered into a Settlement Agreement dated 19th October 2009 (Anjali Settlement Agreement) under the Charterparty between the Parties dated 27th November 2008 (the Anjali Charterparty) in relation to m/v "Greatship Anjali" where under MarSol is to pay GIL interalia a sum of USD 581,750 (United States Dollars Five Hundred Eighty One Thousand Seven Hundred and fifty) (the Anjali Outstanding) towards unpaid hire under the Anjali Charterparty.

**NOW THEREFORE**, MarSol and GIL agree to the following :-

**VALIDITY**

1.1. The present Agreement shall be effective when signed by both Parties but with retrospective effects as of 2nd October 2009 1200 hrs.

## 2.  OUTSTANDING HIRE

2.1. As on the date of signing this Agreement a sum of USD 1,811,516 (United States Dollars One Million Eight Hundred and Eleven Thousand Five Hundred and Sixteen only) (the "Outstanding") is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL

2.2. The Parties agree that in addition to the Outstanding an amount of US$ 450,000/- (United States Dollars Four Hundred and Fifty Thousand) shall be paid by MarSol as compensation to GIL for the early re-delivery of the Vessel under the Charter.

2.3. MarSol shall pay to GIL the above mentioned Outstanding and the additional compensation as per the following outstanding statement of accounts and schedule of payments which shall be strictly adhered to as time being of the essence:

**Annexure I (Outstanding Statement) & Annexure II (Schedule of Payments) is an integral part of this agreement.**

2.4. Notwithstanding the schedule above, MarSol shall have the option at any time to settle the Outstanding in one payment against a *una tantum* discount on the Compensation mentioned in clause 2.2 above as per below understanding.

    i. No compensation amount shall be payable by MarSol if the Outstanding and the Anjali Outstanding are paid on or before 31st October 2009. OR

    ii. Only USD 360,000 (United States Dollars Three Hundred and Sixty Thousand) as compensation shall be payable by MarSol to GIL if MarSol adheres to the Anjali Outstanding Schedule and MarSol adheres strictly to the Schedule in 2.3 upto and inclusive of the payment as due on 31st March 2010 without any default or delay. In such event, MarSol shall be entitled to deduct the sum of USD 90,000 from the June Installment.



2

2.5. The Parties hereby agree and recognise that apart from the Outstanding no other amount is due or shall become due under the Charterparty on account of Hire and early redelivery, PROVIDED ALWAYS THAT MarSol adheres to the Schedule above and makes payment as agreed under the Anjali Settlement Agreement.

2.6 The Parties further agree that if MarSol defaults in payment of any two consecutive   installment stated in Clause 2.3 hereinabove or defaults in payment of the last installment due on June 2010, the defaulting sums along with all other sums due and payable including the compensation stated in 2.2 shall become due and payable immediately and shall carry an interest in the measure of 10% (ten per cent) annually till the date of realisation. For the purpose of this Clause the November installment under the Anjali Agreement and that the November installment under this Agreement shall be considered to be one installment.

2.7 Subject to Clause 2.6 above, if there is a default in payment of any installment, the same shall carry an interest in the measure of 10% (ten percent) annually from the date when the said installment was to have been paid till the date of realization/payment.

## 3.   EARLY RE-DELIVERY OF THE VESSEL

**3.1** The date of re-delivery of the Vessel is agreed to be 1200 hrs on 2nd October 2009 and GIL accepts the early re-delivery of the said Vessel without claiming any damages save the agreed compensation under 2.2 subject to MarSol adhering to the schedule of payment under 2.3 and making payment of the Anjali Outstanding in terms with the Anjali Settlement Agreement.

## 4.   RELEASE FROM OBLIGATIONS

4.1. Subject to Marsol adhereing to the obligations and commitments agreed to in this Agreement, this agreement shall be in full and final settlement of all claims in relation to the unpaid hire under the Charterparty and arising out of or connected with the early re-delivery by MarSol under the Charterparty.

## 5.   Further assurances.

5.1 The Parties agree to execute and deliver any additional papers, documents and other assurances, and take all acts that are reasonably necessary to carry out the intent of this Agreement.

3

## 6. LAW AND JURISDICTION

6.1 This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force. On the receipt of one party of the nomination in writing of the other parties arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC**   )
Mr. Syed M. Bukhari                                            )
Executive Director                                               )
For and on behalf of the Charterers                     )

In the presence of:_____

**GREATSHIP (INDIA) LIMITED**                           )
Mr. Ravi K. Sheth                                                )
Managing Director                                              )
For and on behalf of the Owners                         )

In the presence of:_____

4

Annexure I

# MARINE LOGISTICS SOLUTIONS (MARSOL) LLC

## GREATSHIP (INDIA) LIMITED
### Outstanding Statement

| Date | Inv no | Description | Amount in US Dollar |
|------|--------|-------------|---------------------|
| | | **Vessel : GS AMRITA** | |
| 4-Jun-09 | 33/2009 | Ch.hire-01.05.'09 - 31.05.'09 | 232,120 |
| 4-Jul-09 | 35/2009 | Ch.hire-01.06.'09 - 30.06.'09 | 507,600 |
| 4-Aug-09 | 36/2009 | Ch.hire-01.07.'09 - 31.07.'09 | 524,520 |
| 4-Sep-09 | 37/2009 | Ch.hire-01.08.'09 - 31.08.'09 | 434,000 |
| | | Ch.hire-01.09.'09 - 30.09.'09 | 420,000 |
| | | Ch.hire-01.10.'09 - 02.10.'09 | 21,000 |
| | | | |
| | | May'08 Charter hire diff. 1.5days | 25,380 |
| | | | |
| | | Less: Dry-dock period 9.61-days | (134,575) |
| | | Off-hire ROB D.N: 09/3110 | (218,529) |
| | | | |
| | | | **1,811,516** |
| | | | |
| | | **Vessel : GS ANJALI** | |
| 31-May-08 | 02/2008 | Ch.hire-27.05.'08 - 31.05.'08 | 19,250 |
| 4-Jul-09 | 23/2009 | Ch.hire-01.06.'09 - 30.06.'09 | 562,500 |
| | | | |
| | | Less: Insurance premium | (24,566) |
| | | *(01.07.09 to 27.10.2010)* | |
| | | | **557,184** |
| | | | |
| | | **TOTAL INVOICE AMOUNT** | **2,368,700** |
| | | **Compensation Amount** | **450,000** |
| | | | **$ 2,818,700** |

Annexure II

| | | SCHEDULE OF PAYMENTS | | |
|---|---|---|---|---|
| 2009 | October | | $ | 400,000 |
| 2009 | November | | $ | 275,846 |
| 2009 | December | | $ | 400,000 |
| 2010 | January | | $ | 500,000 |
| 2010 | February | | $ | 500,000 |
| 2010 | March | | $ | 442,854 |
| 2010 | April | | $ | 100,000 |
| 2010 | May | | $ | 100,000 |
| 2010 | June | | $ | 100,000 |
| | | | | |
| | | | | |
| | | TOTAL AMOUNT | $ | 2,818,700 |

# EXHIBIT 2

# SETTLEMENT AGREEMENT
under
Charterparty dated 27th November 2007 – m/v "Greatship Anjali"

**THIS AGREEMENT,** made and entered into this 19th day of October 2009

By and between

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC,** a company incorporated under the laws of U.A.E, having its office at P.O. Box 31966, Dubai, (U.A.E) (hereinafter referred to as "**MarSol**" or the "Charterers") which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the FIRST PARTY;

and

**GREATSHIP (INDIA) LIMITED,** a company incorporated under the laws of India, having its office at # 101, Marathon Innova B2, Off Ganpatrao Kadam Marg, Lower Parel (W), Mumbai 400 013, India (hereinafter referred to a "**GIL**" or the "Owners"), which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the SECOND PARTY.

The above parties shall be collectively referred to as the "**Parties**" and each individually as a "**Party**"

**WHEREAS**

**(A)**   The Parties have entered into a charterparty dated 27th November 2007 (the "Charterparty") for the let and hire of the m/v "Greatship Anjali" (the "Vessel"), a  2008 built anchor handling tug supply vessel presently registered under the Indian flag.

**(B)**   Under the Charterparty, hire is outstanding from the MarSol to the GIL and the Parties wish to amicably resolve the payment of the outstanding hire.

**(C)**   MarSol has entered into a Service Agreement dated 23rd May 2008 with Marine Delivery Pte Ltd ("**Marine Delivery**"), whereunder USD (USD 1,206,000) is due and payable by Marine Delivery to MarSol which MarSol has directed Marine Delivery not to pay MarSol and to hold to the credit of GIL towards payments of MarSols due under the Charterparty to GIL. MarSol, GIL and Marine Delivery intend on entereing into a novation agreement (the "**Novation Agreement**") inter alia dealing with the outstandings not covered under this Agreement.

**(D)**   Marsol wishes to re-deliver the Vessel earlier than as provided in the Charterparty and GIL agrees to accept early re-delivery of the Vessel.

**NOW THEREFORE,** MarSol and GIL agree to the following :-

**1.   VALIDITY**

1.1.   The present Agreement shall be effective when signed by both Parties.

**2.   OUTSTANDING HIRE**

2.1.   The Parties acknowledge to each other that a sum of USD 581,750 (the "Outstanding 1") is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL for the hire statement for the month of June 2009.

TRUE COPY
ATTESTED BY ME

*Z. J. D'Monte*

**N. J. D'MONTE**
ADVOCATE & NOTARY
51-A, Chapel Road,
Bandra, Mumbai-50.
Ph. 9820068642 / 26424884

1 9 NOV 2010

**CERTIFIED TRUE COPY**

For GREATSHIP (INDIA) LIMITED

*Raghia*

Amisha Ghia
**Company Secretary**

NOTARY
★ N. J. D'MONTE ★
GREATER BOMBAY
Regd. No. 359
GOVT. OF MAHARASHTRA

2.2 The Parties further acknowledge to each other that a sum of (USD 2,049,375 ) upto Oct 19th , 2009 ("Outstanding 2" and together with Outstanding 1 the "Outstandings") is earned as hire under the Charterparty of which: (i) a sum of USD 1,130,625 is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL for the hire statement for the month of July 2009; and (ii) the balance being hire for the months of August 2009, September 2009 and till the date of signing of this Agreement 19th October 2009 which is earned under the Charterparty but not due as on the date of this Agreement.

2.3. MarSol agrees to pay GIL the Outstanding 1 as follows:-

On or before 31st October 2009:  USD 400,000
On or before 30th November 2009: USD 181,750.

2.4. That Marsol has instructed Marine Delivery under the Novation Agreement to pay the entirety of its outstanding on account of charter hire from Marine Delivery under the Service Agreement to GIL in full satisfaction of the Outstanding 2.

2.5. The Parties hereby agree and recognise that apart from the Outstandings no other amount is due or shall become due under the Charterparties on account of hire and/or early re-delivery of the Vessel PROVIDED ALWAYS THAT MarSol makes the payment as per 2.3 and the Parties and Marine Delivery have duly signed and given effect to the Novation Agreement.

2.6. The Parties further agree that any delay or default in payment as set out in 2.3 shall carry an interest in the measure of 10% (ten per cent) annually. This is without prejudice to GIL's rights to take such steps to secure and receive payment for the unpaid admitted hire dues under the Charterparty and damages for early redelivery in the event MarSol fails to pay in accordance with 2.3.

## 3.   EARLY RE-DELIVERY OF THE VESSEL

3.1. The Parties acknowledge that the sums due to MarSol from Marine Delivery under the Service Agreement are greater than the hire due from MarSol to GIL under 2.2 above. The sums due under 2.2 above is USD 2,049,375 whereas the sums due under the Service Agreement to MarSol is USD 2,186,000. Accordingly, there is an excess amount of USD 136,625 (the "Excess Amount").

3.2. In consideration of MarSol paying as per 2.3 above and instructing Marine Delivery to make the payment of the Excess Amount to GIL and the Parties entering into the Novation Agreement with Marine Delivery in relation to the Service Agreement, whereby GIL would take over the contract from MarSol, GIL agrees to accept early re-delivery of the Vessel from MarSol under the Charterparty.

3.3. GIL, MarSol and Marine Delivery shall sign the Novation Agreement simultaneously with this Settlement Agreement, incorporating the agreement between the Parties set out in 3.2 above as also novating the Service Agreement whereby GIL shall replace MarSol and on such other terms and conditions as are set out in the Novation Agreement.

3.4. Upon signing of this Agreement and the Novation agreement by the Parties and Marine Delivery, GIL shall accept the early re-delivery of the said Vessel from MarSol.

## 4.   Insurance

4.1 GIL agrees to pay the sum of (USD24,153.29) upto Oct 27th,2009 to MarSol on account of insurance taken out by MarSol as desponent Owners under the Service Agreement for the period upto 27th October 2009, upon MarSol providing a letter from the Shipowners Protection and Indemnity Club dated no later than 25th October 2009 and no earlier than the date of this agreement confirming that the contractual liability cover required under the Service Agreement is valid,



2

subsisting and in full force as on 27th October 2009 and there are no outstanding premiums for this period.

4.2 On confirmation from GIL of their acceptance of such proof of insurance in writing, MarSol shall deduct the said sum of (USD 24,153.29) from the second instalment of November 2009 and make payment to GIL accordingly.

## RELEASE FROM OBLIGATIONS

5.1. Subject to Marsol adhering to the obligations and commitments agreed to in this Agreement, this Agreement shall be in full and final settlement of all claims in relation to the unpaid hire under the Charterparty and arising out of or connected with the early redelivery of the Vessel by MarSol under the Charterparty.

## 6.  FURTHER ASSURANCES

6.1  The Parties agree to execute and deliver any additional papers, documents and other assurances, and take all acts that are reasonably necessary to carry out the intent of this Agreement.

## 7.  LAW AND JURISDICTION

7.1  This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force. On the receipt of one party of the nomination in writing of the other parties arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator.   If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.


**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC**     )
Mr. Syed M. Bukhari                             )
Executive Director                              )
For and on behalf of the Charterers             )


**GREATSHIP (INDIA) LIMITED**                    )
Mr. Ravi K. Sheth                               )
Managing Director                               )
For and on behalf of the Owners                 )

3

# EXHIBIT 3

*I hereby certify this to be a true copy of the original.*

*Per C Jago*

IN THE MATTER OF THE ARBITRATION ACT 1996

*( PETER CHARLES JAGO )*

AND IN THE MATTER OF AN ARBITRATION

*29th November, 2011*

BETWEEN

**M F B**
**45 Moorfields**
**London EC2Y 9AE**

## GREATSHIP (INDIA) LIMITED
of Mumbai, India

**Claimants**
**(Greatship)**

and

## MARINE LOGISTICS SOLUTIONS (MARSOL) LLC
of Dubai, United  Arab Emirates

**Respondents**
**(Marsol)**

**"GREATSHIP AMRITA" and "GREATSHIP ANJALI"**
**Settlement Agreements dated 19 October 2009**

---

## FINAL ARBITRATION AWARD

---

**WHEREAS**

**A.** By two settlement agreements each of which was dated 19 October 2009 ("the Settlement Agreements") Greatship (India) Limited ("Greatship") and Marine Logistics Solutions (Marsol) LLC ("Marsol") agreed terms of settlement in relation to two time charterparties each of which was dated 27 November 2007 for the vessels "Greatship Amrita" and "Greatship Anjali" which vessels were

2

owned by Greatship and time chartered to Marsol on the terms and conditions therein set out.

**B.** The parties agreed that any disputes arising out of the Settlement Agreements should be referred to Arbitration in London with English Law to govern the Settlement Agreements.

**C.** The Settlement Agreements each contained a law and jurisdiction clause which provided as follows:-

*"This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to Arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within 14 days, failing which the Arbitrator already appointed shall act as sole arbitrator. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final"*

**D.** Disputes having arisen between the parties arising out of the Settlement Agreements, Greatship appointed the undersigned Stuart Fitzpatrick of The Pump House, Chapel Square, Stewkley, Leighton Buzzard, Bedfordshire, LU7 0HA and Marsol appointed the undersigned David Martin-Clark of Stone Chambers, 4 Field Court, Gray's Inn, London, WC1R 5EF to act as arbitrators. Pursuant to the law and jurisdiction clauses referred to above as well as paragraph 6 of the LMAA Terms (2006) – (which Terms applied to this arbitration reference by the agreement of the parties), the seat of this arbitration is in England.

**E.** In this reference, by claim submissions dated 8 February 2010, Greatship asserted a claim against Marsol in the amount of US$2,318,700. By further submissions dated 30 March 2010, Greatship amended their claim to the amount of US$2,268,700 and by closing submissions dated 6 July 2010 Greatship amended their claim to the amount of US$2,168,700. In addition to claiming the said sums, Greatship also claimed for contractual interest at the rate of 10% per annum and pro rata and for costs. Marsol denied that any sum was due to Greatship and requested us to dismiss Greatship's claims and to award to them (Marsol) damages, applicable interest and costs.

3



F. Greatship were represented by MFB Solicitors of London and Marsol, up to 16 June 2010, were represented by Fichte & Co. Legal Consultancy of Dubai. After this date, Marsol represented themselves in this reference which proceeded by way of written submissions and documentary evidence with neither party requesting an oral hearing.

**NOW WE,** the said Stuart Fitzpatrick and David Martin-Clark, having taken upon ourselves the burden of this reference and having carefully and conscientiously considered the submissions and evidence (all documentary) put before us and given due weight thereto and for the Reasons annexed hereto **DO HEREBY MAKE, ISSUE AND PUBLISH** this our **FINAL ARBITRATION AWARD** as follows: -

1. **WE FIND AND HOLD** that Greatship's claim succeeds in full in the amount of US$2,168,700.

2. **WE FURTHER FIND AND HOLD** that Marsol's claim for damages, applicable interest and costs fails in full and is hereby dismissed.

3. **WE THEREFORE AWARD AND DIRECT** that Marsol shall forthwith pay to Greatship the sum of US$2,168,700 (two million one hundred and sixty eight thousand and seven hundred United States Dollars) together with (a) contractual interest (calculated at the rate of 10% per annum and pro rata) for the period from and including 1 December 2009 up to and including 5 April 2010 in the sum of US$84,316.80 and (b) contractual interest on the sum of US$2,168,700 at the rate of 10% per annum and pro rata from 5 April 2010 until the date of payment.

4. **WE FURTHER AWARD AND DIRECT** that Marsol shall bear their own costs and shall pay Greatship's costs in relation to this our Final Arbitration Award (for the assessment of which, if not agreed, we hereby reserve our jurisdiction) together with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests, from the date of this our Final Arbitration Award until that of payment.

4

5. **WE FURTHER AWARD AND DIRECT** that Marsol shall bear and pay the costs of this our Final Arbitration Award, including interlocutory costs, which amount to a total of £6,070 (six thousand and seventy Pounds Sterling) provided, however, that, if in the first instance Greatship shall have paid any amount in respect of the said costs of this our Final Arbitration Award, they shall be entitled to the immediate reimbursement by Marsol of the sum so paid together with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests, from the date of payment by Greatship until the date of reimbursement by Marsol.

6. **WE HEREBY DECLARE** that this our Final Arbitration Award, is final as to all matters determined herein and **WE HEREBY RESERVE** our jurisdiction to determine by further award or awards any and all remaining issues between the parties.

**GIVEN UNDER OUR HANDS** at the seat of the arbitration in England this 22nd day of September 2010.

Stuart Fitzpatrick
_____
Stuart Fitzpatrick

_____
Witness

David Martin-Clark
_____
David Martin-Clark

_____
Witness

**"GREATSHIP AMRITA" and "GREATSHIP ANJALI"**
**Settlement Agreements dated 19 October 2009**


**Reasons for and forming part of the Final**
**Arbitration Award dated 22 September 2010**


**Introduction**

1. By two time charterparties each of which was dated 27 November 2007 Greatship (India) Limited ("Greatship") time chartered their vessels "Greatship Amrita" and "Greatship Anjali" to Marine Logistics Solutions (Marsol) LLC ("Marsol") on the terms and conditions therein set out.

2. By October 2009 Marsol were in default of paying time charter hire under both time charterparties and desired to redeliver the vessels to Greatship earlier than provided for thereunder.

3. By a settlement agreement dated 19 October 2009 made between Greatship and Marsol ("the Anjali Agreement) relating to the "Greatship Anjali" charterparty, inter alia, Marsol agreed to pay to Greatship the sum of US $581,750 in respect of outstanding time charter hire and Greatship agreed to credit to Marsol the sum of US $24,153.29 in respect of insurance taken out by Marsol; resulting in the net sum of US $557,596.71 being payable by Marsol to Greatship. The Anjali Agreement also contained terms relating to the early redelivery of the "Greatship Anjali" including terms that Marsol should pay compensation to Greatship in respect thereof and the agreed method of payment.

4. By a further settlement agreement also dated 19 October 2009 made between Greatship and Marsol ("the Amrita Agreement") relating, inter alia, to the "Greatship Amrita" charterparty, Marsol agreed to pay to Greatship the sum of US $1,811,516 in respect of outstanding time charter hire and US $450,000 in respect of compensation for the early redelivery of the "Greatship Amrita". The Amrita Agreement contained provisions for discounting the compensation sum of US $450,000 which were not complied with and which are irrelevant for the purposes of this reference. Accordingly, the total sum due by

Marsol to Greatship under the Amrita Agreement amounted to US $2,261,516.

5.  Annexure I to the Amrita Agreement (which was an integral part of that agreement) set out the total sums due by Marsol to Greatship under the Anjali Agreement and the Amrita Agreement in the total amount of US $2,818,700. In this Annexure the net sum due from Marsol to Greatship in relation to the Anjali Agreement was stated to be US $557,184 rather than the figure of US $557,596.71 provided for in the Anjali Agreement. No explanation was proffered to explain this discrepancy but in any event it was in favour of Marsol and in their submissions they accepted that the total amount due by them to Greatship under the said settlement agreements amounted to the said sum of US $2,818,700.

6.  Pursuant to the terms of the Amrita Agreement, Greatship and Marsol agreed that Marsol would pay to Greatship the said amount of US $2,818,700 by an agreed schedule of payments ("the Payment Schedule") which was set out in Annexure II to this agreement which was stated to be an integral part of this agreement.

7.  The Payment Schedule provided that the said amount of US $2,818,700 would be paid by the dates and in the amounts set out below:-

| Date of payment | Amount of payment |
|---|---|
| October 2009 | US $400,000 |
| November 2009 | US $275,846 |
| December 2009 | US $400,000 |
| January 2010 | US $500,000 |
| February 2010 | US $500,000 |
| March 2010 | US $442,854 |
| April 2010 | US $100,000 |
| May 2010 | US $100,000 |
| June 2010 | US $100,000 |
|  | **Total Amount US $2,818,700** |

8.  Towards settlement of the sums due to Greatship under the Payment Schedule, Marsol made payment to Greatship of the following sums on the following dates:-

| Date of payment | Amount received |
|---|---|

7

| 5 November 2009 | US $200,000 |
| 16 November 2009 | US $100,000 |
| 7 December 2009 | US $100,000 |
| 1 February 2010 | US $100,000 |
| 3 March 2010 | US $50,000 |
| 6 April 2010 | US $100,000 |
| | **Total amount paid US $650,000** |

9.  On the remittance advice for the payment of US $200,000 which they made to Greatship on 5 November 2009, Marsol described the payment as part payment of the November 2009 instalment under the Payment Schedule.  On the remittance advice in relation to the payment of US $100,000 which Marsol made to Greatship on 16 November 2009, it was stated that the payment was *"towards pmt as per schedule against vessel GS Anjali and GS Amrita"*

10. The Amrita Agreement provided as follows:-

> *"2.1 As on the date of signing this Agreement a sum of US $1,811,516.... is outstanding under the Charterparty by way of hire which has become due and payable by Marsol to GIL.*
>
> *2.3 Marsol shall pay to GIL.... as per the following outstanding statement of accounts and schedule of payments which shall be strictly adhered to as time being of the essence:*
>
> ***Annexure 1 (Outstanding Statement) & Annexure II (Schedule of Payments) is an integral part of this agreement.***
>
> *2.6 The Parties further agree that if Marsol defaults in payment of any two consecutive instalment stated in clause 2.3 herein above or defaults in payment of the last instalment due on June 2010, the defaulting sums along with all other sums due and payable including the compensation stated in 2.2 shall become due and payable immediately and shall carry an interest in the measure of 10% (ten percent) annually till the date of realisation.  For the purpose of this Clause the November instalment under the Anjali Agreement and that the November instalment under this Agreement shall be considered to be one instalment.*
>
> *2.7 Subject to Clause 2.6 above, if there is a default in payment of any instalment, the same shall carry an interest in the measure of 10% (ten*

8

*percent) annually from the date when the said instalment was to have been paid till the date of realisation/payment."*

11. The Anjali Agreement provided as follows:-

*"2.1    The Parties acknowledge to each other that a sum of US $581,750... is outstanding under the Charterparty by way of hire which has become due and payable by Marsol to GIL for the hire statement for the month of June 2009."*

12. It is against this background that Greatship asserted that Marsol were in default in paying the October and November 2009 instalments due under the Payment Schedule and accordingly that the total amount due to them from Marsol was accelerated as of 1 December 2009 or, alternatively, that Marsol had defaulted in paying the December 2009 and January 2010 instalments due under the Payment Schedule and that the total amount due to them from Marsol was accelerated as of 1 February 2010.   Greatship submitted that they were entitled to an award in their favour in respect of the accelerated debt plus contractual interest.   Marsol denied that they were in default and requested us to dismiss Greatship's claim and to award to them (Marsol) damages, applicable interest and costs.

**Greatship's Claim**

13. By claim submissions dated 8 February 2010, Greatship submitted that, pursuant to the Payment Schedule, Marsol were obliged to pay to them by 31 October 2009 the sum of US $400,000 and by 30 November 2009 the sum of US $275,846.

14. They further submitted that they were entitled to allocate the payments received from Marsol of US $200,000 (on 5 November 2009) and US $100,000 (on 16 November 2009) towards the October 2009 instalment of US $400,000 due under the Payment Schedule. Accordingly, they submitted that, as at 1 December 2009, Marsol owed US $100,000 in respect of the October 2009 instalment and the entire US $275,846 in respect of the November 2009 instalment.   Greatship further submitted that, as regards the said payment of US $200,000, in circumstances where the October 2009 instalment of US $400,000 had not been paid, Marsol were not entitled to allocate the said US $200,000 towards payment of the November 2009 instalment.

9

15. Greatship alternatively submitted that, if Marsol were entitled to allocate the said payment of US $200,000 to the November 2009 instalment, as at 1 December 2009, Marsol owed US $300,000 in respect of the October 2009 instalment and US $75,846 in respect of the November 2009 instalment.

16. Greatship further submitted that, in either case, Marsol had defaulted in payment of two consecutive instalments being the October and November 2009 instalments and that, pursuant to Clause 2.6 of the Amrita Agreement, all sums due thereunder were accelerated as of 1 December 2009 in the principal sum of US $2,518,700 which was therefore due and payable by Marsol to Greatship as of that date together with appropriate contractual interest.

17. After taking into account the payments received from Marsol on 7 December 2009 and 1 February 2010 each in the sum of US $200,000, Greatship submitted that they were entitled to an award against Marsol in the sum of US $2,318,700 together with contractual interest at the rate of 10% per annum and pro rata.

**Marsol's Defence**

18. Marsol submitted that, on 12 October 2009, they had paid US $100,000 towards payment of the October 2009 instalment due under the Payment Schedule.  In support of this submission they exhibited a bank transfer receipt which evidenced payment of US $100,000 for the purpose of *"towards Charter Hire Greatship Amrita – May '09 – Part Payment Settlement"*.

19. They further submitted that the payment of US $200,000 they made on 5 November 2009 and US $75,846 (as part of the payment of US $100,000 they paid on 16 November 2009) were paid in respect of the November 2009 instalment due under the Payment Schedule and that this instalment (totalling US $275,846) had therefore been paid in full.

20. Marsol further submitted that, after taking into account the payment they made of US $100,000 on 12 October 2009 and US $24,154 (being part of the payment of US $100,000 which they made on 16 November 2009) the amount of US $275,846 remained outstanding in respect of the October 2009 instalment of US $400,000 due under the Payment Schedule.

21. Accordingly, Marsol submitted that no two consecutive instalments were in default under the Payment Schedule and therefore that there was no event of default under clause 2.6 of the Amrita Agreement whereby the total amount due under the Payment Schedule could be accelerated as of 1 December 2009. They further submitted that, in the circumstances, Greatship were not entitled to commence arbitration proceedings in these circumstances claiming that the total amount due had been accelerated as of 1 December 2009.

## Greatship's Reply

22. By reply submissions dated 30 March 2010 Greatship admitted that Marsol had paid to them the sum of US $100,000 on 12 October 2009. However, they submitted that the settlement agreements were made on 19 October 2009 and that these agreements set out the sums due by Marsol to Greatship as of that date. In support of their submission, Greatship referred to Clause 2.1 of the Amrita Agreement and Clause 2.1 of the Anjali Agreement pursuant to which the parties had agreed and acknowledged the sums due by Marsol to Greatship as of 19 October 2009. They submitted that all payments made in respect of the "Greatship Amrita" and "Greatship Anjali" time charterparties before 19 October 2009 were irrelevant to Marsol's obligation to make payment to Greatship as provided for in the settlement agreements and the Payment Schedule.

23. Greatship further submitted that, by a letter dated 26 November 2009, they had given notice to Marsol that they had allocated the payments of US $200,000 and US $100,000 made by Marsol in November 2009 towards payment of the October 2009 instalment of US $400,000 due under the Payment Schedule. They submitted that their primary case was that, on the proper construction of the settlement agreements and the Payment Schedule, Marsol did not have the right to determine the allocation of the payments they made. Alternatively, Greatship submitted that, if Marsol had failed to make an allocation, then they (Greatship) had the right to make such allocation as they deemed fit. They said that their right of allocation was exercised by them much earlier than any purported allocation by Marsol and therefore there could be no dispute as to the parties' intention. They further submitted that Marsol had not at any time, before the commencement of the arbitration proceedings, rejected the notice given by Greatship in their letter dated 26 November 2009.

24. In the light of the foregoing, Greatship repeated the submission they made in their claim submissions dated 8 February 2010 that, as of 1 December 2009, Marsol were in default, that the total amount due under the Payment Schedule had been accelerated and was due as at that date in the sum of US $2,518,700.

25. In the further alternative, Greatship submitted that, by the date of their reply submissions (30 March 2010), instalments subsequent to the November 2009 instalment had fallen due and were payable being the December 2009 instalment in the sum of US $400,000, the January 2010 instalment in the sum of US $500,000 and the February 2010 instalment in the sum of US $500,000. They said that the only payments that they had received from Marsol since 1 December 2009 were US $100,000 on 7 December 2009, US $100,000 on 1 February 2010 and US $50,000 on 3 March 2010. They said that the total of these payments amounted to US $250,000 which was less than any single instalment due under the Payment Schedule subsequent to the November 2009 instalment.

26. In these circumstances, Greatship submitted that it was impossible to distribute the said sum of US $250,000 so as to avoid the irrefutable fact that Marsol had been and were in default of payment of the December 2009 and the January and February 2010 instalments due under the Payment Schedule. Accordingly, they submitted that, even if Marsol's case (that the November 2009 instalment had been paid in full and therefore that there were no two consecutive instalments in default as of 1 December 2009) was accepted, then; as of 1 February 2010 Marsol were in default of payment of two consecutive instalments and the total debt due would be accelerated as of that date.

27. In conclusion, and after taking into account the US $50,000 paid by Marsol on 3 March 2010, Greatship claimed that they were entitled to an award in the principal sum of US $2,268,700 together with contractual interest at the rate of 10% per annum and costs.

**Marsol's response submissions**

28. Marsol submitted that, if (which was not admitted) the payment of US $100,000 made on 12 October 2009 was not made in respect of sums due under the Payment Schedule, as of 1 December 2009 the position was that US $375,846 was outstanding in respect of the October 2009 instalment and the November 2009 instalment of US $275,846 had been paid in full. They further submitted that they

12



were not in default as default in payment of two consecutive instalments was required under the Amrita Agreement.

29. In this connection, they submitted that an allocation by a debtor did not need to be in express terms but could be inferred from the surrounding circumstances if these showed that there was an intention to allocate. They further submitted that, in order to avoid two consecutive monthly payments being in default (i.e. the October and November 2009 instalments), they intended, by their payments of US $200,000 and US $100,000 made in November 2009, to fully pay the November 2009 instalment which they submitted had been correctly paid by them and therefore that there was no default in paying two consecutive instalments as of 1 December 2009.

30. Marsol further submitted that Greatship had introduced a new claim in their reply submissions by which they attempted to extend these arbitration proceedings to defaults which arose after they were commenced. Marsol said that, if Greatship's alternative case (based on the acceleration of the amount due as of 1 February 2010) was permitted, this would be a gross misuse of the arbitration proceedings as the original claim submissions would have been filed prior to any default on their part. They submitted that Greatship could not rely upon Marsol's failure to pay instalments which fell due under the Payment Schedule after the commencement of the arbitration proceedings.

### Greatship's Closing Submissions

31. By submissions dated 6 July 2010, Greatship repeated their primary case that Marsol were in default in paying in full the October and November 2009 instalments and that as a consequence the debt was accelerated as of 1 December 2009.

32. As regards the allocation of the payments of US $200,000 and US $100,000 made by Marsol in November 2009, Greatship submitted that it was well established (and appeared to be common ground) that, where a debtor (i.e. Marsol) owes more than one debt to the same creditor (i.e. Greatship), and makes a payment of less than the total amount of his indebtedness, then unless otherwise agreed, the debtor has the right to appropriate that payment to one or more specified debts. Greatship submitted that the debtor exercised that right by communicating its intention to the creditor either expressly, or by implication. However, if a debtor makes a payment without

13

PC Jags

37. In conclusion, Greatship submitted that, as of 1 December 2009, Marsol had paid a total of US $300,000 of which US $ 200,000 had been allocated to the November 2009 instalment and the other US $100,000 to the October 2009 instalment either by Marsol by implication or by Greatship expressly. Accordingly, as at that date, Greatship submitted that US $300,000 remained outstanding in relation to the October 2009 instalment and US $75,846 remained outstanding on the November 2009 instalment and that Marsol were in default in payment of two consecutive monthly instalments.

38. Greatship repeated their alternative case that, if the November 2009 instalment had been paid in full, then Marsol were nevertheless in default of payment of the December 2009 and the January 2010 instalments and accordingly that the total debt was accelerated as of 1 February 2010. They submitted that Marsol had no substantive answer to this claim and had resorted to a pleading point saying that it would be a gross misuse of the arbitration proceedings to allow this alternative case. Greatship said that there was no merit in this argument.

39. In conclusion, having given credit to Marsol for the further sum of US $100,000 paid by them on 6 April 2010, Greatship submitted that they were entitled to an award against Marsol in the principal sum of US $2,168,700 together with appropriate contractual interest at the rate of 10% per annum.

**Marsol's Closing Submissions**

40. Marsol repeated their previous arguments emphasising their case that payment of US $300,000 in November 2009 clearly showed their intention to settle the November 2009 instalment of US $275,846 as their payment was equivalent to this instalment and not the October 2009 instalment which they said was much greater than the amount transferred. They repeated their submission that they were not in default of the October 2009 and November 2009 payments and therefore the debt was not accelerated as of 1 December 2009. Marsol repeated their submission that Greatship had commenced the arbitration in December 2009 before there was any default under the settlement agreements and that it would be a great misuse of these arbitration proceedings if Greatship were entitled to succeed on their alternative case that Marsol were in default of payment of the

December 2009 and January 2010 instalments whereby the debt was accelerated as of 1 February 2010.

41. In these submissions, Marsol did not specifically maintain their previous argument that the sum of US $100,000 which they paid to Greatship on 12 October 2010 should be credited to the sums due under the Payment Schedule and in particular towards the October 2009 instalment. They did, however, maintain that they were not in default of the terms of the settlement agreements as mentioned in their earlier submissions.

42. Furthermore, in these submissions, Marsol, for the first time, submitted that they were not obliged to pay any compensation to Greatship in respect of the early redelivery of the "Greatship Amrita" and the "Greatship Anjali" as no provision for such compensation was contained in the material time charterparties.

**Greatship's Final Response**

43. Greatship maintained their previous submissions. As regards Marsol's argument that they were not obliged to pay any compensation in respect of the early redelivery of the vessels, Greatship submitted that the terms of the charterparties were irrelevant as Marsol had agreed to pay compensation pursuant to the terms of the settlement agreements which superseded the terms of the charterparties.

**Discussion/Conclusion**

44. The terms of the Payment Schedule and Clause 2.6 of the Amrita Agreement are clear. Marsol were obliged to pay to Greatship by 31 October 2009 the sum of US $400,000 and by 30 November 2009 the sum of US $275,846. If these payments were not made in full then, pursuant to the said Clause 2.6, the total amount due under the Payment Schedule would be accelerated as of 1 December 2009. Furthermore, contractual interest at the rate of 10% per annum and pro rata would accrue on any outstanding instalments and on the accelerated debt.

45. In Greatship's claim submissions dated 8 February 2010, they submitted that, on a proper construction of the Amrita Agreement, Marsol were not entitled to allocate their payments of US $200,000 and US $100,000 made in November 2009 to any particular instalment due under the Payment Schedule. However, in their closing

16

submissions, it appears that Greatship were content to accept that the US $200,000 payment could be properly allocated by Marsol to the November 2009 instalment of US $275,846 payable under the Payment Schedule.

46. Greatship's primary case therefore was that, as at 1 December 2009, US $300,000 remained outstanding in respect of the October 2009 instalment and US $75,846 remained outstanding in respect of the November 2009 instalment and therefore that Marsol were in default of payment of two consecutive instalments and the total amount due by Marsol to them under the Payment Schedule was therefore accelerated as of 1 December 2009 in the amount of US $2, 518,700.

47. Accordingly, in order to defeat Greatship's primary case, Marsol had to satisfy us that the payment they made of US $100,000 on 16 November 2009 was, by implication, to be allocated to the November 2009 instalment (or at least US $75,846 of that payment of US $100,000). Marsol accept that they made no express allocation of this payment of US $100,000 (or any part thereof) towards the November 2009 instalment. They said that this was to be implied as, if this cash (or more correctly US $75,846 thereof) was allocated to that instalment, they would not be in default of two consecutive monthly instalments and the debt therefore could not be accelerated as of 1 December 2009. The burden of proof is therefore on Marsol to make good their case.

48. In this connection, it is worthwhile quoting the relevant extract from Chitty on Contracts as follows:-

QUOTE

*Rights to appropriate payment. Where several separate debts are due from the debtor to the creditor, the debtor may, when making a payment, appropriate the money paid to a particular debt or debts, and if the creditor accepts the payment so appropriated, he must apply it in the manner directed by the debtor. If, however, the debtor makes no appropriation when making the payment, the creditor may do so.*

*Debtor's right to appropriate. It is essential that an appropriation by the debtor should take the form of a communication, express or implied, to the creditor of the debtors intention to appropriate the payment to a specified debt (or debts), so that the creditor may know that his rights of appropriation as creditor cannot arise. It is not*

17

*essential that the debtor should expressly specify at the time of payment, which debt or account he intended the payment to be applied to. His intention may be collected from other circumstances showing that he intended at the time of the payment to appropriate it to a specific debt or account....*

***Creditor's right to appropriate.*** *Where the debtor has not exercise his option, and the right to appropriate has therefore devolved upon the creditor, he may exercise it at any time ... Once, however, the election is made and communicated to the debtor, it is irrevocable.*

UNQUOTE

49. Although we can see some merit in Marsol's argument we are not persuaded that they are correct for the following main reasons:-

    (a) They specifically allocated the US $200,000 payment made on 5 November 2009 to the November 2009 instalment which must have involved a conscious thought process. If they wished to allocate the US $100,000 payment they made to Greatship on 16 November 2009, likewise, to the November 2009 instalment then why did they not expressly say so? Despite having the opportunity to comment, Marsol proffered no explanation.

    (b) In circumstances where the US $200,000 payment made by Marsol on 5 November 2009 was specifically allocated to the November 2009 instalment but no such allocation was made in relation to the said US $100,000 payment, why should Greatship understand or be taken to understand that this payment (or at least US $75,846 of it) was to be, by implication, allocated to the November 2009 instalment rather than the October 2009 instalment or towards the interest accruing thereon.

    (c) In the payment advice relating to the said US $100,000 payment, this payment was identified as a remittance *"towards pmt as per schedule against vessel GS Anjali and GS Amrita"*. By its terms, this is a general allocation towards sums due by Marsol to Greatship under the Payment Schedule and not to any particular instalment thereunder.

    (d) On 26 November 2009, Greatship wrote to Marsol in very clear terms stating that both of the payments they had received from Marsol in November 2009 had been allocated to the October

18



2009 instalment and that nothing had been paid by Marsol in respect of the November 2009 instalment. In this letter, Greatship also stated that, if the October and November 2009 instalments were not paid by 30 November 2009, the total amount due under the settlement agreements would be accelerated. Marsol did not respond to this letter and, despite having the opportunity to do so, Marsol have made no submissions concerning the content of this letter. If Marsol, in November 2009, had intended that the US $100,000 payment was to be allocated to the November 2009 instalment, we would have expected that they would have replied immediately to this letter disagreeing with Greatship's actions and specifically stating that both the US $200,000 and US $100,000 payments were made in respect of the November 2009 instalment, that this instalment had therefore been paid in full and therefore that there was no question of them going into default as suggested by Greatship.

50. We are therefore not satisfied that the US $100,000 paid by Marsol on 16 November 2009 should be allocated to the November 2009 instalment due under the Payment Schedule. Marsol did not make an express allocation and, for the reasons given above, we do not consider that there was an implied allocation of this payment to this instalment. Furthermore we accept Greatship's submission that, in the circumstances, they were entitled to allocate this payment to the October 2009 instalment and that they did so by their letter dated 26 November 2009.

51. As regards the payment made by Marsol to Greatship of US $100,000 on 12 October 2009, we accept Greatship's submission that this payment was not related to any instalment which was required to be paid under the settlement agreements and the Payment Schedule which clearly set out the amount due to Greatship as at 19 October 2009. Indeed, we note that in their closing submissions, Marsol did not specifically maintain their original argument that credit in respect of this payment should be made as against the October 2009 instalment due under the Payment Schedule.

52. We reject Marsol's late argument that they were not obliged to pay any compensation to Greatship in respect of the early redelivery of the vessels. The terms of the settlement agreements are clear and provide that Marsol were obliged to pay compensation to Greatship as a condition of the early redelivery of the vessels.

19

53. In the premises, we accept Greatship's primary case that, as of 1 December 2009, US $300,000 was outstanding in respect of the October 2009 instalment and US $75,846 was outstanding in respect of the November 2009 instalment Accordingly, as two consecutive monthly instalments were in default, pursuant to Clause 2.6 of the Amrita Agreement, the total amount due from Marsol to Greatship was accelerated, as of 1 December 2009, in the sum of US $2,518,700. We therefore hold that Greatship are entitled to recover this sum, after giving credit for payments received after 1 December 2009, together with contractual interest at the rate of 10% per annum and pro rata on the accelerated debt and on any outstanding instalments due under the Payment Schedule pursuant to the provisions of Clauses 2.6 and 2.7 of the Amrita Agreement.

54. After 1 December 2009, Marsol paid to Greatship the sum of US $100,000 on 7 December 2009, the sum of US $100,000 on 1 February 2010, the sum of US $50,000 on 3 March 2010 and the sum of US $100,000 on 6 April 2010 (totalling US $350,000). Accordingly, after giving credit to Marsol in respect of payment of these sums, Greatship are entitled to an award in their favour in the sum of US $2,168,700 together with appropriate contractual interest at the rate of 10% per annum and pro rata.

55. Having accepted Greatship's primary case, there is no need for us to address their alternative case that the total debt was accelerated as of 1 February 2010. Having said this, we consider it appropriate to record that the parties agreed that this arbitration reference was to be governed by the LMAA Terms (2006) and pursuant to paragraph 10 thereof we have the jurisdiction to determine all disputes arising under or in connection with the transaction the subject matter of the reference including any further disputes arising subsequent to the commencement of the arbitration proceedings (which were commenced in December 2009). Accordingly, we were entitled, if necessary, to determine Greatship's alternative case that the total amount due was accelerated as of 1 February 2010.

## Interest

56. Greatship are entitled to contractual interest at the rate of 10% per annum and pro rata in respect of the October 2009 instalment and in respect of the accelerated debt as of 1 December 2009 after giving

credit for the various payments made by Marsol to Greatship after that date.  We have calculated the interest due as follows:-

(a) **October 2009 instalment of US $400,000** (due on or before 31 October 2009).

(i) 1 November 2009 to 16 November 2009

US $400,000 x 10% per annum = US $109.59 per day.

15 days x US $109.59 = US $1,643.85.

**[US $100,000 paid on 16 November 2009]**

(ii) 16 November 2009 to 30 November 2009

US $300,000 x 10% per annum = US $82.19 per day

15 days x US $82.19 = US $1,232.85.

**Accelerated debt due 1 December 2009 = US $2,518,700**

(b) 1 December 2009 to 7 December 2009

US $2,518.700 x 10% per annum = US $690.05 per day

6 days x US $690.05 = US $4,140.30.

**[US $100,000 paid on 7 December 2009]**

(c) 7 December 2009 to 1 February 2010

US $2,418.700 x 10% per annum = US $662.66 per day

56 days x US $662.66 = US $37,108.96.

**[US $100,000 paid on 1 February 2010]**

(d) 1 February 2010 to 3 March 2010

US $2,318,700 x 10% per annum =  US $635.26 per day

21

30 days x US $635.26 per day = US $19,057.80.

**[US $50,000 paid on 3 March 2010]**

(e) 3 March 2010 to 6 April 2010

US $2,268,700 x 10% per annum = US $621.56 per day

34 days x US $621.56 = US $21,133.04.

**[US $100,000 paid on 6 April 2010]**

(f) 6 April 2010 to the date of payment

US $2,168,700 x 10% per annum equals US $594.16 per day

57. Accordingly, the total amount of contractual interest due from Marsol to Greatship for the period from and including 1 December 2009 up to and including 5 April 2010 as set out in sub-paragraphs (a) to (e) above amounts to US $84,316.80.  In addition contractual interest on the sum of US $2,168,700 at the rate of 10% per annum and pro rata will accrue from 5 April 2010 until the date of payment in the daily amount of US $594.16.

**Costs**

58. Greatship's claim has succeeded and Marsol's claims have been dismissed.  In accordance with the normal rule that costs follow the event, we consider that Greatship are entitled to recover their costs from Marsol and that Marsol should be held responsible for the payment of our charges.



## SETTLEMENT AGREEMENT

Under

Charterparty dated 27th November 2007 – m/v "Greatship Amrita"

**THIS AGREEMENT,** made and entered into this 19th day of October 2009

By and between

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC (ETA MARSOL)**, a company incorporated under the laws of Dubai, having its office at P.O. Box 31966, Dubai, (U.A.E) (hereinafter referred to as "**MarSol**" or the "Charterers") which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the FIRST PARTY;

and

**GREATSHIP (INDIA) LIMITED**, a company incorporated under the laws of India, having its office at # 101, Marathon Innova B2, Off Ganpatrao Kadam Marg, Lower Parel (W), Mumbai 400 013, India (hereinafter referred to a "GIL" or the "Owners"), which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the SECOND PARTY.

The above parties shall be collectively referred to as the "**Parties**" and each individually as a "**Party**"

**WHEREAS**

**(A)** The Parties have entered into a charterparty dated 27th November 2007 (the "Charterparty") for the let and hire of the m/v "Greatship Amrita" (the "Vessel"), a 2008 built anchor handling tug supply vessel presently registered under the Indian flag.

**(B)** Under the Charterparty, hire is outstanding from the MarSol to the GIL and the Parties wish to amicably resolve the payment of the outstanding hire.

**(C)** Marsol wishes to re-deliver the Vessel earlier than as provided in the Charterparty and GIL agrees to accept early re-delivery of the Vessel.

TRUE COPY
ATTESTED BY ME

**N. J. D'MONTE**
ADVOCATE & NOTARY
51-A, Chapel Road,
Bandra, Mumbai-50.
Ph. 9820068642 / 26424884

CERTIFIED TRUE COPY

For GREATSHIP

Amisha Ghia
Company Secretary

1 9 NOV 2010



(D)  The Parties have entered into a Settlement Agreement dated 19th October 2009 (Anjali Settlement Agreement) under the Charterparty between the Parties dated 27th November 2008 (the Anjali Charterparty) in relation to m/v "Greatship Anjali" where under MarSol is to pay GIL interalia a sum of USD 581,750 (United States Dollars Five Hundred Eighty One Thousand Seven Hundred and fifty) (the Anjali Outstanding) towards unpaid hire under the Anjali Charterparty.

**NOW THEREFORE**, MarSol and GIL agree to the following :-

**VALIDITY**

1.1.  The present Agreement shall be effective when signed by both Parties but with retrospective effects as of 2nd October 2009 1200 hrs.

**2.    OUTSTANDING HIRE**

2.1.  As on the date of signing this Agreement a sum of USD 1,811,516 (United States Dollars One Million Eight Hundred and Eleven Thousand Five Hundred and Sixteen only) (the "Outstanding") is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL

2.2.  The Parties agree that in addition to the Outstanding an amount of US$ 450,000/- (United States Dollars Four Hundred and Fifty Thousand) shall be paid by MarSol as compensation to GIL for the early re-delivery of the Vessel under the Charter.

2.3.  MarSol shall pay to GIL the above mentioned Outstanding and the additional compensation as per the following outstanding statement of accounts and schedule of payments which shall be strictly adhered to as time being of the essence:

**Annexure I (Outstanding Statement) & Annexure II (Schedule of Payments) is an integral part of this agreement.**

2.4.  Notwithstanding the schedule above, MarSol shall have the option at any time to settle the Outstanding in one payment against a *una tantum* discount on the Compensation mentioned in clause 2.2 above as per below understanding.

   i.    No compensation amount shall be payable by MarSol if the Outstanding and the Anjali Outstanding are paid on or before 31st October 2009. OR

   ii.   Only USD 360,000 (United States Dollars Three Hundred and Sixty Thousand) as compensation shall be payable by MarSol to GIL if MarSol adheres to the Anjali Outstanding Schedule and MarSol adheres strictly to the Schedule in 2.3 upto and inclusive of the payment as due on 31st March 2010 without any default or delay. In such event, MarSol shall be entitled to deduct the sum of USD 90,000 from the June Installment.



2

2.5. The Parties hereby agree and recognise that apart from the Outstanding no other amount is due or shall become due under the Charterparty on account of Hire and early redelivery, PROVIDED ALWAYS THAT MarSol adheres to the Schedule above and makes payment as agreed under the Anjali Settlement Agreement.

2.6 The Parties further agree that if MarSol defaults in payment of any two consecutive installment stated in Clause 2.3 hereinabove or defaults in payment of the last installment due on June 2010, the defaulting sums along with all other sums due and payable including the compensation stated in 2.2 shall become due and payable immediately and shall carry an interest in the measure of 10% (ten per cent) annually till the date of realisation. For the purpose of this Clause the November installment under the Anjali Agreement and that the November installment under this Agreement shall be considered to be one installment.

2.7 Subject to Clause 2.6 above, if there is a default in payment of any installment, the same shall carry an interest in the measure of 10% (ten percent) annually from the date when the said installment was to have been paid till the date of realization/payment.

## 3. EARLY RE-DELIVERY OF THE VESSEL

3.1 The date of re-delivery of the Vessel is agreed to be 1200 hrs on 2nd October 2009 and GIL accepts the early re-delivery of the said Vessel without claiming any damages save the agreed compensation under 2.2 subject to MarSol adhering to the schedule of payment under 2.3 and making payment of the Anjali Outstanding in terms with the Anjali Settlement Agreement.

## 4. RELEASE FROM OBLIGATIONS

4.1. Subject to Marsol adhering to the obligations and commitments agreed to in this Agreement, this agreement shall be in full and final settlement of all claims in relation to the unpaid hire under the Charterparty and arising out of or connected with the early re-delivery by MarSol under the Charterparty.

## 5. Further assurances.

5.1 The Parties agree to execute and deliver any additional papers, documents and other assurances, and take all acts that are reasonably necessary to carry out the intent of this Agreement.

3

## 6.   LAW AND JURISDICTION

6.1   This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force. On the receipt of one party of the nomination in writing of the other parties arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator.  If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC**   )
Mr. Syed M. Bukhari                                              )
Executive Director                                                 )
For and on behalf of the Charterers                      )

In the presence of _____

**GREATSHIP (INDIA) LIMITED**                           )
Mr. Ravi K. Sheth                                                  )
Managing Director                                                 )
For and on behalf of the Owners                          )

In the presence of: _____

4

Annexure II

| SCHEDULE OF PAYMENTS | | |
|---|---|---|
| 2009 | October | $ 400,000 |
| 2009 | November | $ 275,846 |
| 2009 | December | $ 400,000 |
| 2010 | January | $ 500,000 |
| 2010 | February | $ 500,000 |
| 2010 | March | $ 442,854 |
| 2010 | April | $ 100,000 |
| 2010 | May | $ 100,000 |
| 2010 | June | $ 100,000 |
| | | |
| | TOTAL AMOUNT | $ 2,818,700 |

## SETTLEMENT AGREEMENT
### under
### Charterparty dated 27th November 2007 – m/v "Greatship Anjali"

**THIS AGREEMENT,** made and entered into this 19th day of October 2009

By and between

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC,** a company incorporated under the laws of U.A.E, having its office at P.O. Box 31966, Dubai, (U.A.E) (hereinafter referred to as "**MarSol**" or the "Charterers") which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the FIRST PARTY;

and

**GREATSHIP (INDIA) LIMITED,** a company incorporated under the laws of India, having its office at # 101, Marathon Innova B2, Off Ganpatrao Kadam Marg, Lower Parel (W), Mumbai 400 013, India (hereinafter referred to a "GIL" or the "Owners"), which expression shall, unless repugnant to the context or meaning thereof, be deemed to mean and include its successors and permitted assigns, the SECOND PARTY.

The above parties shall be collectively referred to as the "**Parties**" and each individually as a "**Party**"

**WHEREAS**

**(A)**  The Parties have entered into a charterparty dated 27th November 2007 (the "Charterparty") for the let and hire of the m/v "Greatship Anjali" (the "Vessel"), a 2008 built anchor handling tug supply vessel presently registered under the Indian flag.

**(B)**  Under the Charterparty, hire is outstanding from the MarSol to the GIL and the Parties wish to amicably resolve the payment of the outstanding hire.

**(C)**  MarSol has entered into a Service Agreement dated 23rd May 2008 with Marine Delivery Pte Ltd ("**Marine Delivery**"), whereunder USD (USD 1,206,000) is due and payable by Marine Delivery to MarSol which MarSol has directed Marine Delivery not to pay MarSol and to hold to the credit of GIL towards payments of MarSols due under the Charterparty to GIL. MarSol, GIL and Marine Delivery intend on entereing into a novation agreement (the "**Novation Agreement**") inter alia dealing with the outstandings not covered under this Agreement.

**(D)**  Marsol wishes to re-deliver the Vessel earlier than as provided in the Charterparty and GIL agrees to accept early re-delivery of the Vessel.

**NOW THEREFORE,** MarSol and GIL agree to the following :-

**1.   VALIDITY**

1.1.   The present Agreement shall be effective when signed by both Parties.

**2.   OUTSTANDING HIRE**

2.1.   The Parties acknowledge to each other that a sum of USD 581,750 (the "Outstanding 1") is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL for the hire statement for the month of June 2009.

TRUE COPY
ATTESTED BY ME

Z.d.D'Houl

**N. J. D'MONTE**
ADVOCATE & NOTARY
51-A, Chapel Road,
Bandra, Mumbai-50.
Ph. 9820063642 / 26424884

1 9 NOV 2010

CERTIFIED TRUE COPY

For GREATSHIP (INDIA) LIMITED

Amisha Ghia
Company Secretary

2.2   The Parties further acknowledge to each other that a sum of (USD 2,049,375 ) upto Oct 19th , 2009 (the "Outstanding 2" and together with Outstanding 1 the "Outstandings") is earned as hire under the Charterparty of which: (i) a sum of USD 1,130,625 is outstanding under the Charterparty by way of hire which has become due and payable by MarSol to GIL for the hire statement for the month of July 2009; and (ii) the balance being hire for the months of August 2009, September 2009 and till the date of signing of this Agreement 19th October 2009 which is earned under the Charterparty but not due as on the date of this Agreement.

2.3   MarSol agrees to pay GIL the Outstanding 1 as follows:-

> On or before 31st October 2009:  USD 400,000
> On or before 30th November 2009: USD 181,750.

2.4   That Marsol has instructed Marine Delivery under the Novation Agreement to pay the entirety of its outstanding on account of charter hire from Marine Delivery under the Service Agreement to GIL in full satisfaction of the Outstanding 2.

2.5   The Parties hereby agree and recognise that apart from the Outstandings no other amount is due or shall become due under the Charterparties on account of hire and/or early re-delivery of the Vessel PROVIDED ALWAYS THAT MarSol makes the payment as per 2.3 and the Parties and Marine Delivery have duly signed and given effect to the Novation Agreement.

2.6   The Parties further agree that any delay or default in payment as set out in 2.3 shall carry an interest in the measure of 10% (ten per cent) annually. This is without prejudice to GIL's rights to take such steps to secure and receive payment for the unpaid admitted hire dues under the Charterparty and damages for early redelivery in the event MarSol fails to pay in accordance with 2.3.

## 3.   EARLY RE-DELIVERY OF THE VESSEL

3.1   The Parties acknowledge that the sums due to MarSol from Marine Delivery under the Service Agreement are greater than the hire due from MarSol to GIL under 2.2 above. The sums due under 2.2 above is USD 2,049,375 whereas the sums due under the Service Agreement to MarSol is USD 2,186,000. Accordingly, there is an excess amount of USD 136,625 (the "Excess Amount").

3.2   In consideration of MarSol paying as per 2.3 above and instructing Marine Delivery to make the payment of the Excess Amount to GIL and the Parties entering into the Novation Agreement with Marine Delivery in relation to the Service Agreement, whereby GIL would take over the contract from MarSol, GIL agrees to accept early re-delivery of the Vessel from MarSol under the Charterparty.

3.3   GIL, MarSol and Marine Delivery shall sign the Novation Agreement simultaneously with this Settlement Agreement, incorporating the agreement between the Parties set out in 3.2 above as also novating the Service Agreement whereby GIL shall replace MarSol and on such other terms and conditions as are set out in the Novation Agreement.

3.4   Upon signing of this Agreement and the Novation agreement by the Parties and Marine Delivery, GIL shall accept the early re-delivery of the said Vessel from MarSol.

## 4.   Insurance

4.1   GIL agrees to pay the sum of (USD24,153.29) upto Oct 27th,2009 to MarSol on account of insurance taken out by MarSol as desponent Owners under the Service Agreement for the period upto 27th October 2009, upon MarSol providing a letter from the Shipowners Protection and Indemnity Club dated no later than 25th October 2009 and no earlier than the date of this agreement confirming that the contractual liability cover required under the Service Agreement is valid,

subsisting and in full force as on 27th October 2009 and there are no outstanding premiums for this period.

On confirmation from GIL of their acceptance of such proof of insurance in writing, MarSol shall deduct the said sum of (USD 24,153.29) from the second instalment of November 2009 and make payment to GIL accordingly.

**RELEASE FROM OBLIGATIONS**

5.1.  Subject to Marsol adhering to the obligations and commitments agreed to in this Agreement, this Agreement shall be in full and final settlement of all claims in relation to the unpaid hire under the Charterparty and arising out of or connected with the early redelivery of the Vessel by MarSol under the Charterparty.

**6.     FURTHER ASSURANCES**

6.1  The Parties agree to execute and deliver any additional papers, documents and other assurances, and take all acts that are reasonably necessary to carry out the intent of this Agreement.

**7.     LAW AND JURISDICTION**

7.1  This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to arbitration in London, one arbitrator being appointed by each Party, in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof for the time being in force. On the receipt of one party of the nomination in writing of the other parties arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator.   If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

**MARINE LOGISTICS SOLUTIONS (MARSOL) LLC**   )
Mr. Syed M. Bukhari   )
Executive Director   )
For and on behalf of the Charterers   )

**GREATSHIP (INDIA) LIMITED**   )
Mr. Ravi K. Sheth   )
Managing Director   )
For and on behalf of the Owners   )

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GREATSHIP (INDIA) LIMITED,

                    Petitioner,             11 CIV

    -v-

MARINE LOGISTICS SOLUTIONS       **VERIFICATION OF**
(MARSOL) LLC,                      **PETITION**

                    Respondent.
--------------------------------------------------------x

Pursuant to 28 U.S.C. §1746, KERRI M. D'AMBROSIO, Esq., declares under the penalty of perjury:

1.      I am an attorney with the law firm of CHALOS & CO, P.C., counsel for the Petitioner, GREATSHIP (INDIA) LIMITED, herein;

2.      I have read the foregoing Petition and know the contents thereof; and

3.      I believe the matters to be true based on documents and information obtained from employees and representatives of the Petitioner through its agents, underwriters and attorneys.

4.      The reason that this verification was made by deponent and not by the Petitioner is because Petitioner is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Oyster Bay, New York
       January 20, 2011

                          CHALOS & CO, P.C.
                          Attorneys for Petitioner
                          GREATSHIP (INDIA) LIMITED

         By:      *Kerri M. D'Ambrosio*
                          Kerri M. D'Ambrosio (KD-0249)
                          123 South Street
                          Oyster Bay, New York 11771
                          Tel: (516) 714-4300
                          Fax: (516) 750-9051
                          Email: kdambrosio@chaloslaw.com